NOT FOR PUBLICATION                                                                    **CLOSED**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| BERNARD B. KERIK, | |
| Plaintiff, | Civil Case No. 14-488 (FSH) |
| v. | **OPINION & ORDER** |
| JOSEPH TACOPINA, | Date: April 3, 2014 |
| Defendant. | |

**HOCHBERG, District Judge:**

This matter comes before the Court upon Defendant Joseph Tacopina's[1] ("Defendant" or "Tacopina") motion to dismiss for improper venue under Federal Rule of Civil Procedure 12(b)(3). (Dkt. No. 7.) In the alternative, Defendant requests transfer to the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1404(a). (Dkt. No. 7.) The Court has reviewed the submissions of the parties and considers the motion pursuant to Federal Rule of Civil Procedure 78.

**I.   BACKGROUND**[2]

According to Plaintiff's complaint, this is an action for legal malpractice against Tacopina for false and misleading representations regarding a plea agreement, among other

---

[1] Plaintiff Bernard B. Kerik ("Plaintiff" or "Kerik") initially sued Michael S. Ross in addition to Tacopina. (*See* Dkt. No. 1.) Ross, an ethics attorney, allegedly counseled Tacopina during the relevant time period. But on March 19, 2014, Kerik dismissed Ross from this matter. (Dkt. No. 15.)

[2] On a motion to dismiss for improper venue, "[w]e accept as true all of the allegations in the complaint, unless those allegations are contradicted by the defendants' affidavits." *Bockman v. First Am. Mktg. Corp.*, 459 F. App'x 157, 158 n.1 (3d Cir. 2012).

1

things, that resulted in substantial harm to Plaintiff.  (Dkt. No. 1, Introduction.)  This Court has jurisdiction because the parties are diverse and the amount in controversy exceeds $75,000.00.

Defendant Tacopina is an attorney admitted to practice in New York and maintains an office in New York City.  (Dkt. No. 1, ¶ 3.)  Plaintiff Kerik is the former New York City Police Commissioner.  (*Id*. ¶ 5.)  Kerik first met Tacopina in 2002 and maintained a close personal relationship with him for several years.  (*Id*.)  On December 3, 2004, President George W. Bush nominated Kerik as Secretary of the U.S. Department of Homeland Security.  (*Id*. ¶ 6.)  On December 10, 2004, Kerik withdrew his name from consideration for that position, which sparked inquiries by the media.  (*Id*. ¶ 7.)  Around that time, Tacopina began representing Kerik.  (*Id*. ¶ 8.)

Soon thereafter, Tacopina informed Kerik that Walter Arsenault, the First Deputy Commissioner of the New York City Department of Investigation ("DOI") contacted him about an investigation regarding Kerik's conduct when he was the Commissioner of the Department of Corrections between 1998 and 2001.  (*Id*. ¶ 9.)  Kerik alleges that Tacopina met with representatives of the DOI and the Bronx County District Attorney's Office to discuss allegations related to apartment renovations that Kerik had paid for on an apartment in the Bronx.[3]  (*Id*. ¶ 10.)  This investigation ran from approximately 2005 to 2006.  (*Id*. ¶ 16.)  Kerik was also being investigated for allegedly having corruptly intervened in a 1999 investigation—conducted by a city agency—into Interstate Industrial Corporation ("Interstate").  (*Id*. ¶ 14.)  At that time, Interstate employed Kerik's brother and Larry Ray, one of Kerik's friends.  (*Id*.)

On March 4, 2006, Tacopina sent Kerik a copy of a report prepared by the New Jersey Attorney General in charge of the Gaming Commission and requested that Kerik respond to the

---

[3] These renovations were completed by Tim Woods, a contractor recommended by one of Kerik's friends, Frank DiTommaso.  (*Id*. ¶ 12.)

statements therein.  (*Id*. ¶ 21.)  The next day, Kerik sent Tacopina his answers to the report, which consisted of information relating to the payment of renovations in his Bronx apartment.  (*Id*. ¶ 22.)  On June 20, 2006, Tacopina sent Kerik an email indicating that the DOI investigation would be closed on favorable terms.  (*Id*. ¶ 23.)  On June 30, 2006, on the advice and allegedly false representations of Tacopina, Kerik entered into a negotiated plea allocation/agreement with the Bronx District Attorney's Office and pled guilty to two ethics violations.  (*Id*. ¶ 26.)  According to the complaint, Tacopina "masterminded" the plea agreement and "sold Mr. Kerik down the river."  (*Id*. ¶¶ 27, 63.)  Kerik alleges that, prior to accepting the terms of the plea agreement, Tacopina visited Kerik's home in New Jersey and told Kerik and his wife that accepting the plea would end any and all investigations against him.  (*Id*. ¶ 28.)  In addition, Kerik alleges that Tacopina represented that there would be no tax liabilities as a result of his plea.  (*Id*.; *see also id*. ¶ 64.)

In July 2006, the U.S. Attorney's Office in the Southern District of New York initiated a federal grand jury investigation of Kerik.  (*Id*. ¶ 30.)  Federal prosecutors subpoenaed Tacopina in March 2007, and Tacopina ceased representing Kerik due to an alleged conflict.  (*Id*. ¶ 31-32.)  This left Kerik represented by Ken Breen, another attorney that had been Kerik's lawyer since at least 2006.  (*Id*.)

Around September 2007, Tacopina asked Kerik for help in locating an investor for a real estate venture connected to Raffaello Follieri, a friend and New York client of Tacopina.  (*Id*. ¶¶ 34-35.)  Tacopina represented that he would split a $1.5 million finder's fee with Kerik if he assisted in the deal.  (*Id*. ¶¶ 34-35.)  Kerik alleges that he introduced Tacopina and Follieri to a Connecticut hedge fund, Plainfield Assets, which eventually agreed to fund the venture for Follieri.  (*Id*. ¶ 36-38.)  Tacopina allegedly confirmed the finder's fee in November 2007 while

3

meeting Kerik in Queens.  (*Id*. ¶ 40.)   At that same meeting, Tacopina informed Kerik that Assistant U.S. Attorneys were in the process of destroying his law practice and that he thought he was going to lose his law practice.  (*Id*. ¶ 39.)

On November 8, 2007, Kerik was indicted by a New York federal grand jury on a 16-count indictment.  (*Id*. ¶ 41.)   On November 15, 2007, Breen, Kerik's then attorney, was provided a witness list by federal prosecutors where Tacopina was listed as a prosecution witness.  (*Id*. ¶ 42.)  Breen then contacted Tacopina and instructed him not to speak with Kerik.  (*Id*. ¶ 43.)  On November 30, Kerik learned that the finder's fee related to the Follieri deal was actually $2.5 million rather than the $1.5 million represented by Tacopina and was signed on October 5, 2007.  (*Id*. ¶¶ 44-46.)  On December 9, 2007, Tacopina allegedly called Kerik at his home in New Jersey and made several representations about the finder's fee.  (*Id*. ¶¶ 47-48.)

Kerik also alleges that Tacopina met with federal prosecutors and divulged privileged information related to the Bronx case without the consent of Kerik.  (*Id*. ¶¶ 51-52, 55.)  Kerik alleges that, as a result, Kerik was not able to attempt to prevent the release of Tacopina's statements to federal prosecutors.  (*Id*. ¶ 56-58.)  Kerik alleges that Tacopina's actions were not negligent but, rather, intentional acts designed to destroy or limit Kerik's ability to defend himself against the federal charges.  (*Id*. ¶ 60, 65.)

On January 23, 2008, Breen was disqualified as counsel for Kerik, allegedly based on statements made by Tacopina.  (*Id*. ¶ 61, 65.)  Kerik was required to find new counsel, which placed him in a financial crisis.  (*Id*. ¶ 62.)  Kerik alleges that Tacopina made these statements knowing that they would cause harm to him.  (*Id*. ¶ 65.)

Kerik alleges that these actions were substantial factors in causing him damages, including—*inter alia*—the loss of liberty, loss of employment, attorney fees, criminal charges,

economic damages, his ability to mount a defense, and taxes. (*Id*. ¶¶ 66-67.) Kerik alleges that but for Tacopina's actions he would have avoided criminal charges, incarceration, and his various damages. (*Id*. ¶ 67.)

Kerik brings several causes of action, including negligence, legal malpractice, breach of fiduciary duty, negligent misrepresentation, fraudulent disclosure (concealment, destruction and spoliation of evidence, civil conspiracy, and aiding and abetting breach of fiduciary duty),[4] breach of contract, intentional misrepresentation, fraud in the inducement, and intentional interference with business relationship/contract. (*See generally* Complaint (Dkt. No. 1).)

## II.  LEGAL STANDARD

"[O]n a motion for dismissal for improper venue under Rule 12 the movant has the burden of proving the affirmative defense asserted by it." *Myers v. Am. Dental Ass'n*, 695 F.2d 716, 724 (3d Cir. 1982). Under 28 U.S.C. § 1391(b), venue is proper in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b). Under 28 U.S.C. § 1406(a), if venue is not proper, the Court may transfer a case to "any district . . . in which it could have been brought" "if it be in the interest of justice." 28 U.S.C. § 1406(a).

---

[4] This claim appears to be based on Tacopina's alleged meetings with former Defendant Ross between 2006 and 2009. (*Id*. ¶¶ 84-99.) The gravamen of this claim is that Ross or Tacopina should have informed Kerik before allegedly giving privileged information to the U.S. Attorney's Office.

Similarly, 28 U.S.C. § 1404(a) provides that "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The purpose of § 1404(a) is to "prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (internal quotations and citations omitted). A decision to transfer an action under this provision rests within the sound discretion of the District Court. *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988).

On a motion to transfer pursuant to § 1404(a), the District Court must undertake a "flexible and individualized analysis," balancing the factors set forth in the statute as well as a number of other case specific factors. Courts in the Third Circuit apply the public and private interest factors outlined in *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879-80 (3d Cir. 1995). The private factors are: (1) the plaintiff's choice of forum; (2) the defendant's preference; (3) where the claim arose; (4) the convenience of the witnesses, but only to the extent they may be unavailable in one of the fora; (5) the convenience of parties; (6) the location of books and records; and the public factors are: (7) the enforceability of any judgment; (8) any practical considerations making trial easy, expeditious or inexpensive; (9) relative administrative difficulty resulting from court congestion; (10) the local interest in deciding local controversies at home; (11) the public policies of the fora; and (12) the trial judge's familiarity with applicable state law. *Id*. The analysis, however, should not be limited to these factors, and factors may have different relevance in particular cases. *See Van Cauwenberghe v. Biard*, 486 U.S. 517, 528-529 (1988). A court's decision to transfer should consider "all relevant factors to determine

whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Jumara*, 55 F.3d at 879.

A plaintiff's choice of venue is not to be "lightly disturbed," and the moving party has the burden of establishing that the proposed transferee forum is proper and that a balancing of the relevant considerations weighs in favor of transfer. *Id*.

### III.   DISCUSSION

#### a.   Venue Analysis

Tacopina moves to dismiss this matter for improper venue under Rule 12(b)(3) or, in the alternative, asks that the case be transferred to the Southern District of New York in the interest of justice. Specifically, Tacopina argues that Kerik only alleges a single physical contact with New Jersey (*i.e.*, that Tacopina allegedly visited Kerik at his home in New Jersey to convince him to accept a plea deal with the Bronx District Attorney's Office)[5] and a handful of emails and telephone calls directed at Kerik in New Jersey. Tacopina argues that this is not enough to establish venue under § 1391(b) because they do not amount to "a substantial part of the events or omissions giving rise to the claim." In contrast, Tacopina argues that the balance of Kerik's allegations arise from events that occurred within the Southern District of New York.

There is no dispute that §§ 1391(b)(1) and 1391(b)(3) do not apply in this case. Instead, Kerik argues that venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial portion of the events underlying his claims occurred in New Jersey. In support of this proposition, Kerik relies on three allegations:[6] (i) that Tacopina's visit to New Jersey and his representations at that time were the catalysts that led to the various federal charges against him and his subsequent

---

[5] Tacopina contends that this visit never occurred. (Dkt. No. 7-3, ¶ 7.)

[6] Several of these allegations are not present in Kerik's complaint and only come from an affidavit submitted in opposition to Tacopina's motion. (*See* Dkt. No. 17-1.)

7

misfortunes;[7] (ii) that Tacopina directed numerous calls and emails to Kerik regarding the Follieri deal and the Bronx plea agreement, some of which are alleged to have been received by Kerik while in New Jersey; and (iii) that Kerik experienced harm from Tacopina's actions in New Jersey.

Here, the District of New Jersey is not the proper venue because a "substantial part" of the events and omissions giving rise to Kerik's claims did not occur in New Jersey, and any stray occurrences in New Jersey do not approach the threshold of substantiality. "The test for determining venue is not the defendant's 'contacts' with a particular district, but rather the location of those 'events or omissions giving rise to the claim.'" *Cottman Transmission Systems, Inc. v. Martino*, 36 F.3d 291, 294 (3d Cir. 1994); *accord Bookman v. First Am. Mktg. Corp.,* 459 F. App'x 157, 161 (3d Cir.2012); *Eviner v. Eng*, Civ. No. 12-2245, 2013 WL 6450284, at *3 (D.N.J. Dec. 6, 2013). Events or omissions that have only "some tangential connection" with the dispute are not sufficient to support venue under this subsection. *Cottman Transmission Sys.,* 36 F.3d at 294.

It is clear from Kerik's Complaint that the vast majority of the events underlying Kerik's causes of action occurred in New York. For example, Kerik alleges, *inter alia*, that Tacopina was negligent, committed legal malpractice, breached his fiduciary duty, and fraudulently disclosed various materials to federal prosecutors. But Tacopina provided Kerik with legal services in New York related to a criminal proceeding based in the Bronx; allegedly communicated to or provided federal prosecutors with privileged information in New York; and allegedly misrepresented real estate dealings from New York. Indeed, almost every fact in the Complaint focuses on New York rather than New Jersey.

---

[7] Kerik also alleges that Tacopina visited him a second time in New Jersey in February 2007. But Kerik does not provide any connection between this alleged meeting and any of his claims. Therefore, the Court does not consider this contact in the venue analysis.

Nor does Tacopina's single visit to Kerik in New Jersey support the theory that "a substantial part of the events or omissions giving rise to the claim occurred" in New Jersey. While Tacopina's visit surely contributes to the underlying facts supporting Kerik's allegations of "incorrect legal advice" related to the plea deal (Dkt. No. 17 at 8), the vast majority of the events supporting Kerik's causes of action occurred in New York. For example, Tacopina's work occurred in New York, related to events that occurred in the Bronx, and were being investigated by the Bronx County District Attorney's Office. Tacopina is also alleged to have reassured Kerik and encouraged him to take the plea while in New York. Indeed, Kerik accepted the plea deal and plead guilty in New York state court. Moreover, Tacopina's single visit to New Jersey has nothing to do with Kerik's many other allegations, including Tacopina's communications with federal prosecutors in New York, Tacopina's dealings with Ross, or Tacopina's representations about the Follieri deal. In short, Tacopina's alleged single visit to New Jersey does not rise to the level of a "substantial part" of the events giving rise to Kerik's claims when considered in the context of this dispute.

Similarly, Tacopina's calls and emails, as well as where Kerik experienced harm, fail to support venue in this district. "When examining claims for misrepresentation on a motion to transfer venue, 'misrepresentations and omissions are deemed to occur in the district where they were transmitted or withheld, not where they are received.'"[8] *Metro. Life Ins. Co. v. Bank One, N.A.*, Civ. No. 03-1882, 2012 WL 4464026, at *6 (D.N.J. Sept. 25, 2012) (citing *Branthover v. Goldenson*, Civ. No. 10-7677, 2011 WL 6179552, at *3 (S.D.N.Y. Dec. 12, 2011)); *see also*

---

[8] Similarly, "[f]or breach of contract of claims, courts considering substantial events or omissions take into account where the contract was negotiated, executed, performed, and breached." *Stalwart Capital, LLC v. Warren St. Partners, LLC*, Civ. No. 11-5249, 2012 WL 1533637, at *4 (D.N.J. Apr. 30, 2012). "[B]ut electronic and telephonic negotiations between two districts do not necessarily create a substantial event." *Id.*

9

*Frato v. Swing Staging, Inc.*, Civ. No. 10-5198, 2011 WL 3625064, at *4 (D.N.J. Aug. 17, 2011) (rejecting argument that plaintiff's fraud and misrepresentation claims arose in New Jersey because that is where he relied on Defendants' alleged misrepresentations). Thus, any misrepresentations or omissions by Tacopina via phone or email would be deemed to occur in New York—the location from which the misrepresentations or omissions originated.

Tacopina's alleged communications are also not connected in a substantial way to Kerik's other claims. For example, these communications have no nexus to Kerik's claim that that Tacopina disclosed privileged information to federal prosecutors in New York, Tacopina's alleged misrepresentations during meetings in New York, or Tacopina's allegedly deficient legal work in New York. Other courts have found that such communications fail to justify venue. *See*, *e.g.*, *Loeb v. Bank of Am.*, 254 F. Supp. 2d 581, 587 (E.D. Pa. 2003) (finding correspondence, telephone calls, and the "impact of economic harm" to be "woefully insufficient to establish venue in this district"); *Eviner*, 2013 WL 6450284, at *3 (finding that telephone calls and visits did not constitute a "substantial part" of plaintiff's claims when claims rested on alleged omissions).

The allegations, considered as a whole, establish that the essential conduct underlying Kerik's claims occurred in New York, not New Jersey.[9] Venue is not proper in this district.

### b. Transfer

Having found that venue is not proper in the District of New Jersey, the Court next considers whether to transfer the case or dismiss it. After careful consideration, the Court finds that it is in the interest of justice to transfer this case to the Southern District of New York.

---

[9] The fact that Defendant Ross, now dismissed from this action, had no contacts whatsoever with New Jersey further confirms that venue is not proper here. It is of no moment that Ross is no longer part of this matter for purposes of analyzing venue. *See Exxon Corp. v. F.T.C.*, 588 F.2d 895, 899 (3d Cir. 1978) ("[V]enue is determined at the outset of the litigation and is not affected by a subsequent change in parties.").

As noted above, 28 U.S.C. § 1406(a) allows the Court to transfer a case to "any district . . . in which it could have been brought" if venue is not proper and transfer is "in the interest of justice." 28 U.S.C. § 1406(a). Tacopina asserts, and Kerik does not dispute, that venue would be proper in the Southern District of New York. This is confirmed by the fact that almost every event underlying Kerik's claims occurred in the Southern District of New York. There is no doubt that at least "a substantial part" of the events underlying Kerik's claims occurred in the Southern District. Here, transfer will save the time and resources of the parties, and it avoids the unnecessarily harsh remedy of dismissal. *See NCR Credit Corp. v. Ye Seekers Horizon, Inc.*, 17 F. Supp. 2d 317, 319 (D.N.J. 1998). Therefore, in the interest of justice, the Court will transfer this matter to the Southern District of New York.

Even if venue were proper, the Court would transfer this matter pursuant to 28 U.S.C. § 1404(a). As explained below, such a transfer would be proper under an analysis of the *Jumara* factors and in the interest of justice.

        i.        *The Private Factors*

First, the Court examines *Jumara's* private factors. Plaintiff clearly prefers to litigate in New Jersey.[10] It is also clear that Defendant prefers to litigate in New York. The third *Jumara* factor addresses where the claims arose. Here, as discussed in detail above, the claims clearly arose from conduct in New York. The next factors are the convenience of the parties and the witnesses. Based on the allegations in the Complaint, there will surely be witnesses involved in this matter that are in New York, but it is not clear if they would be unavailable in New Jersey.

---

[10] Of course, the degree of deference afforded to a plaintiff's choice of forum is reduced when the forum has little connection with the dispute. *See*, *e.g.*, *Gentry v. Leading Edge Recovery Solutions, LLC*, Civ. No. 13-3398, 2014 WL 131811, at *5 (D.N.J. Jan. 10, 2014); *Ramada Worldwide, Inc. v. Bellmark Sarasota Airport, LLC*, Civ. No. 05-2309, 2006 WL 1675067, at *3 (D.N.J. June 15, 2006).

The convenience of the parties is split. It would be more convenient for Tacopina to litigate in New York because his office is in New York, but it would be more convenient for Kerik to litigate in New Jersey because it is his place of residence.[11] The Court also considers the location of books and records. In this matter, the vast majority of books and records will be located in New York. The parties may need to access the records associated with Tacopina's New York firm, including Kerik's file, as well as records associated with Ross, the New York courts, the New York federal prosecutors, and the Bronx District Attorney's Office.

Here, the second, third, and sixth factors favor transfer, the first factor favors not transferring, and the fourth and fifth factors are neutral.

> ii. *The Public Factors*

Next, the Court examines *Jumara's* public factors. First, it does not appear that there are any enforceability problems with a judgment in either New York or New Jersey. The second factor asks the Court to consider if there are any practical considerations making trial easy, expeditious, or inexpensive. In this case, the Southern District of New York already has familiarity with the previous charges leveled against Kerik. This familiarity with the underlying facts could expedite the resolution of this matter and ensures that the court with the closest connection to the case hears the merits. This is especially compelling when the parties may make arguments based on what occurred in the underlying federal prosecution. The next factor asks the Court to consider litigation congestion. There is not a substantial difference in court congestion between the Southern District of New York and the District of New Jersey.

---

[11] Plaintiff argues that a transfer will interfere with his choice of attorney in this matter because his attorney is not admitted to practice in New York. Not so. Plaintiff's attorney may apply to be admitted *pro hac vice* in the Southern District of New York. Defendant has also represented he will not oppose such an application. (Dkt. No. 19 at 14.)

Next the Court considers the local interests in deciding local controversies at home and the public policies of the fora. These are significant factors for this case. Based on the allegations, New York has a substantial interest in regulating attorneys who are admitted to practice within its district. *See*, *e.g.*, *Pittston Co. v. Sedgwick James of New York, Inc.*, 971 F. Supp. 915, 924 (D.N.J. 1997) ("[T]he state in which the broker resides and performs has the significantly greater interest in ensuring that the broker complies with any relevant contract and satisfies reasonable performance standards (*i.e.*, does not commit professional malpractice)."). Similarly, it has an interest in promulgating clear rules on business related fraud and what disclosure restrictions govern attorneys when communicating with local and federal prosecutors. This matter involves New York City's former police commissioner and a New York attorney and, thus, should be decided in New York.

Finally, the Court should consider the trial judge's familiarity with the applicable state law. This is not a significant factor here as judges in the District of New Jersey must frequently apply New York and New Jersey law.[12] Factors seven, nine, and twelve are neutral. Factors eight, ten, and eleven favor transfer.

After reviewing the *Jumara* factors, six factors favor transfer, five factors are neutral, and one favors not transferring this matter. These factors strongly support transferring this matter to the Southern District of New York. After careful consideration, this Court finds that transfer would be in the interest of justice and for the convenience of the parties and witnesses.

## IV.  CONCLUSION & ORDER

For the reasons stated above,

**IT IS** on this 3rd day of April, 2014,

---

[12] This Court need not and does not determine which state's law applies to this dispute.

13

**ORDERED** that Defendant's motion regarding venue (Dkt. No. 7) is **GRANTED IN PART**; and it is further

**ORDERED** that this matter be **TRANSFERRED** to the United States District Court for the Southern District of New York under 28 U.S.C. § 1406(a); and it is further

**ORDERED** that former Defendant Ross's motion to dismiss (Dkt. No. 8) shall be **ADMINISTRATIVELY TERMINATED** as **MOOT**; and it is further

**ORDERED** that the Clerk of the Court **CLOSE** this case.

                    **IT IS SO ORDERED.**

                    **/s/ Faith S. Hochberg**
                    **Hon. Faith S. Hochberg, U.S.D.J.**